Donald L. **WAMP** et al., Plaintiffs,

v.

**CHATTANOOGA HOUSING AUTHORITY, a Tennessee corporation, et al., Defendants.**

Civ. No. 1–74–41.

United States District Court,
E. D. Tennessee, S. D.

Sept. 19, 1974.

Tanner & Jahn, Chattanooga, Tenn., for plaintiffs.

John L. Bowers, Jr., U. S. Atty., Hugh J. Moore, Asst. U. S. Atty., Chattanooga, Tenn., Neil Knox, Office of Regional Counsel, H.U.D., Atlanta, Ga., for United States, H.U.D., and F.H.A.

James W. Gentry, Jr., Chattanooga, Tenn., for Cameron-Oxford Associates.

W. A. Wilkerson, Chattanooga, Tenn., for Chattanooga Housing Authority.

Gary D. Lander & Michael McMahan, Chattanooga, Tenn., for City of Chattanooga, Tenn.

George L. Foster, Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for Milligan-Reynolds Guar. Title Agency Inc. and Advance Mortgage Co.

## OPINION

FRANK W. WILSON, Chief Judge.

This is an action in which the plaintiffs seek to enjoin the construction of an apartment complex upon Cameron Hill, a local landmark within an urban renewal project in Chattanooga, Tennessee. The plaintiffs seek further to obtain a cancellation of the deeds and contracts between the developer and the government agencies in interest and to compel a re-evaluation, resolicitation, and redisposition of the Cameron Hill tract. The lawsuit was filed in the state court and removed to this court. It is presently before this Court upon the following motions: (1) motions on behalf of the defendants, Chattanooga Housing Authority and the City of

Chattanooga, to dismiss the complaint for lack of standing on the part of the plaintiffs to maintain the lawsuit; (2) motion on behalf of the plaintiffs for a preliminary injunction; (3) motion on behalf of the plaintiffs to amend their complaint so as to allege a cause of action for violation of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2)(C); and (4) motion on behalf of the defendant, Chattanooga Housing Authority, for summary judgment. An evidentiary hearing extending over portions of three days was held on the plaintiffs' motion for a temporary injunction and the case is now before the Court upon the record thus established.

■ A threshold question in this lawsuit is with reference to the removal jurisdiction of this Court, for, as noted, this lawsuit was filed in the state court and removed to this court. The defendants, the United States Department of Housing and Urban Development (HUD) and the Federal Housing Authority (FHA), petitioned for removal, averring federal agency removal jurisdiction under 28 U.S.C. § 1346(a)(2) and § 1441 (a). The other defendants petitioned for removal averring federal question removal jurisdiction under 28 U.S.C. § 1331 and § 1441. The parties have raised no issue regarding removal jurisdiction but the defendants have each asserted a lack of standing upon the part of the plaintiffs to maintain the lawsuit. That assertion of necessity raises the issue of removal jurisdiction, for a finding of a lack of standing would prevent the existence of a "case or controversy," a prerequisite to federal court jurisdiction under Article III of the Federal Constitution. [Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)]. In the absence of jurisdiction, no right of removal could exist.

■ In considering the issue of standing, further principles of removal

law must be borne in mind. The first such principle is that the right of removal must have existed as of the time removal was attempted, and the pleadings must be viewed accordingly. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); McLeod v. Cities Service Gas Co., 233 F.2d 242 (10th Cir. 1956). Developments in the lawsuit or attempted amendments to the pleadings subsequent to removal can not serve to confer federal court jurisdiction if none in fact existed as of the time of removal. Accordingly, the jurisdictional issue must be resolved before the Court can consider the plaintiffs' post-removal motion to amend their complaint or the plaintiffs' motion for a temporary injunction.

■■ A second principle of removal law that must be borne in mind is that jurisdiction in the state court is also a prerequisite to removal of a lawsuit to the federal court, as federal court removal jurisdiction is to this extent derivative. In the absence of state court jurisdiction, a dismissal rather than a remand of the lawsuit is required. Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Venner v. Michigan Central R. Co., 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868 (1926); Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943). *See also* 1A J. Moore, Federal Practice, ¶ 0.164[2] n. 41 and ¶ 0.157[3].

■ It is appropriate, therefore, to look initially to the issue of jurisdiction in the state court prior to removal. It is also appropriate to note that the lack of standing of a party to maintain a lawsuit has been held to be jurisdictional in the Chancery Courts of Tennessee. In Patten v. Chattanooga, 108 Tenn. 197, 65 S.W. 414 (1901), wherein the issue was with regard to the standing of a taxpayer to maintain an action in chancery court against a municipality, the rule was stated thusly at page 227, at page 421 of 65 S.W.:

"Thus examined, the Tennessee cases show that the court had *jurisdiction*

to pass on questions, admittedly of a judicial nature only when such *jurisdiction* is invoked 'by those having a special or peculiar interest in the question, and there are none to the contrary." (Emphasis supplied)

With regard to the interest of the plaintiffs in this lawsuit, the original complaint avers that each of the four individual plaintiffs "is a taxpayer to the City of Chattanooga, Tennessee and/or Hamilton County, Tennessee." The plaintiff, Moccasin Bend Association, is averred to be a non-profit corporation having as one of its primary concerns "the proper development of Cameron Hill and Moccasin Bend, prominent local historical landmarks." The complaint then proceeds to aver that some 15 years ago the Chattanooga Housing Authority acquired certain property in or adjacent to the downtown commercial area of Chattanooga in the course of an urban renewal project known as the "Golden Gateway Urban Renewal Project." Included within the property acquired was Cameron Hill, which in turn included a previously existing municipal park known as "Boynton Park." It is further averred that in December of 1973 the defendant, Chattanooga Housing Authority, effected a sale of the Cameron Hill tract to the defendant, Cameron-Oxford Associates, a limited partnership, upon the commitment of the latter to erect an apartment complex on the tract. Various irregularities are alleged on the part of the Chattanooga Housing Authority in planning for the use of the Cameron Hill tract and in effecting a sale of that tract, including (a) failure to permit adequate public participation in planning for the use of the tract, (b) failure to achieve the most beneficial use of the tract, (c) failure to re-establish an adequate replacement for Boynton Park, (d) failure to follow open competitive bidding in effecting a sale of the tract, (e) failure to obtain an adequate price for the tract, (f) failure to require disclosure of the true identity of the purchaser-developer, (g) improperly permitting delays on the part of the purchaser-developer in submitting a firm proposal and in initiating improvements, and (h) failure to give adequate public notice of the various activities hereinabove referred to. The co-defendants are alleged to have participated in one manner or another in the foregoing improper activities of the Chattanooga Housing Authority.

The defendants, both by motion and in their answers, deny standing upon the part of the plaintiffs to maintain this lawsuit.

In connection with the evidentiary hearing upon the plaintiffs' motion for a temporary injunction, the following facts having reference to the issue of standing were made to appear. The plaintiff, Donald Wamp, owns property within Chattanooga and is accordingly a taxpayer of that city. He is an architect by profession. His only interest in the subject matter of the lawsuit is derived from his status as a municipal taxpayer and a resident architect. The plaintiffs, Mark K. Wilson, Jr. and Carl Gibson, were not identified in the evidentiary hearing, their interest in the lawsuit having been described in the complaint as taxpayers of "Chattanooga and/or Hamilton County, Tennessee". The plaintiff, Sherman L. Paul, is a non-resident of Chattanooga, but is a resident of Hamilton County, residing on Signal Mountain, Tennessee. He is a former county tax assessor and is President of the Moccasin Bend Association. His interest in the lawsuit is derived from his status as a taxpayer of Hamilton County and his position as President of the Moccasin Bend Association. The plaintiff, the Moccasin Bend Association, is a non-profit corporation having as one of its purposes the preservation and enhancement of historic and scenic landmarks in the Chattanooga Area, including Cameron Hill. The re-establishment of Boynton Park on Cameron Hill in a manner deemed adequate is an area of particular interest to the association and its members.

Suffice it to say in summary, the interest of each individual plaintiff is

that of a civic minded taxpayer of the city or county wherein Cameron Hill is located. The interest of the corporate plaintiff is that of an association concerned with the preservation of local scenic and historic landmarks. Neither plaintiff asserts any ownership in Cameron Hill or any economic or financial interest in its disposition other than as taxpayers or, in the case of Moccasin Bend Association, as a civic improvement organization. Nor do they claim any special injury to themselves, different from that which might be asserted by any civic minded taxpayer or by any association concerned with the preservation and enhancement of local areas having scenic and historic attributes.

■ The rule in Tennessee is well established that citizens and taxpayers are without standing to maintain a lawsuit to restrain or direct governmental action unless they first allege and establish that they will suffer some special injury not common to citizens and taxpayers generally. Patten v. City of Chattanooga, 108 Tenn. 197, 65 S.W. 414 (1901). The reasons for the rule, as given in the *Patten* case, were variously stated to be that "Courts do not sit to declare abstract propositions of law" and that, "[in matters common to all citizens], the law confers upon the duly-elected representatives of the people the sole right to appeal to the courts for redress" and that "if cities could not exercise public powers, even erroneously or unwisely, when lawfully done by their constituted legislative authority, without the concurrence of every citizen or taxpayer, it would be impossible to have municipal governments . . . ." In the rather recent case of Badgett v. Rogers, 222 Tenn. 374, 436 S.W.2d 292 (1968), the Tennessee Supreme Court stated the rule to be as follows:

"As a general rule of long standing in Tennessee, individual citizens and taxpayers may not interfere with, restrain or direct official acts, when such citizens fail to allege and prove damages or injuries to themselves differ-

ent in character or kind from those sustained by the public at large."

The plaintiffs contend, however, that the allegations and facts in the present case bring them within an exception to the general rule, that exception being that a taxpayer may sue without averring or establishing any special injury where an illegal use of public funds is involved. The exception relied upon by the plaintiffs is stated as follows in Badgett v. Rogers, *supra,* 436 S.W.2d 292 at 294:

"However, the courts have recognized an exception to the general rule where it is asserted that the assessment or levy of a tax is illegal or that public funds are misused or unlawfully diverted from stated purposes."

Having thus stated the exception, it should be noted that the Court in the *Badgett* case nevertheless disallowed an action wherein a taxpayer sought to attack the legality of an expense allotment to a mayor, the expense allotment being in addition to his salary. The disallowance was predicated upon the conclusion that the taxpayer had made insufficient allegations of fact regarding the illegality of the expense allotment.

■ Under the allegations of the complaint, as well as under the facts as hereinabove found by the Court, it would appear that the plaintiffs were without standing to maintain this lawsuit in the Chancery Court of the State of Tennessee wherein it was originally filed. There is no contention made or evidence submitted that the plaintiffs, by reason of the matters complained of, have sustained any special injury or any injury other than that common to all civic minded taxpayers. In fact, the plaintiff, Moccasin Bend Association, does not even assert the status of a taxpayer. With regard to the contention of the individual plaintiff-taxpayers that they come within the exception announced in Badgett v. Rogers, *supra,* affording standing to a taxpayer to litigate an alleged misuse of public funds, there are

two difficulties. The first is that the exception stated in the *Badgett* case refers only to the misuse of public funds, not to the misuse of public property. The present case involves the alleged mismanagement of property in an urban renewal project. Each case cited in the *Badgett* case in support of the exception therein stated pertains to the levying of an unlawful tax or the unlawful expenditure of public funds. The plaintiffs have cited no Tennessee case and the Court has been unable to find one wherein the courts of Tennessee have allowed a taxpayer claiming no special injury to maintain a suit for mismanagement of public property.

In the second place, while the complaint avers many irregularities upon the part of the Chattanooga Housing Authority in the disposition of the Cameron Hill tract and the evidence reflects that a number of unusual, if not questionable, practices were followed by that agency in the negotiation and awarding of a contract disposing of the Cameron Hill tract, the Court, with but one possible exception, is unable to find any specific instance of illegal conduct on the part of the Chattanooga Housing Authority or any other defendant with regard to that disposition. Rather, each action appears to have been within the legislative or administrative authority or discretion of the various agencies and defendants involved.

The only statutory provisions cited to the Court and contended to have been violated under the allegations of the complaint as filed in the state court were the provisions of section 1455(a)(ii) of Title 42 U.S.C. and T.C.A. § 13–821, wherein the agencies responsible for urban renewal projects were required to "afford maximum opportunity" to private enterprise to effect redevelopment, and the provisions of section 1455(e)(1) of Title 42 U.S.C. wherein the local agency in charge of an urban renewal project is required, as a condition precedent to the awarding of a contract, to make public disclosure of "the name of the redeveloper . . . its officers and principal members, shareholders and investors, and other interested parties." There is no evidence of a violation of section 1455 (a)(ii) or T.C.A. § 13–821. The Chattanooga Housing Authority does appear to have entered into a contract with a developer, Cameron-Oxford Associates, a limited partnership listing a trustee as the limited partner having a 95% partnership interest, but without making or requiring any public disclosure of equitable owners or beneficiaries of the trust. Whether this omission would constitute a sufficiently substantial failure on the part of the Chattanooga Housing Authority to constitute a statutory violation or whether such a violation would render any contract thereafter entered into void or voidable at the instance of the Chattanooga Housing Authority, the HUD, the FHA, or the United States attorney acting under his general authority, the Court does not here decide. Suffice it to say that such illegality, if in fact it be an illegality, affords no standing under Tennessee law to a taxpayer suffering no special injury therefrom to litigate the issue.

With regard to agency guidelines, a Chattanooga Housing Authority guideline alleged to have been violated was one providing that urban renewal tracts should be disposed of "under open competitive conditions." The evidence is undisputed that Chattanooga Housing Authority did solicit bids under "open competitive conditions," but, receiving only one bid, thereupon proceeded to engage in extensive, prolonged and private negotiations with the bidder, its successors and assigns, for the disposition of the Cameron Hill tract. Such action on the part of a public agency dealing with public property was, in the Court's opinion, most inappropriate. It does not appear to have been in violation of any law.

Another agency guideline alleged to have been violated was the requirement that urban renewal tracts be disposed of for "fair value" and "in a fair and equitable manner." HUD having approved the sale here under attack, both the

generality of the guidelines and the nature of the evidence provide no basis for the substitution of judicial discretion in lieu of agency discretion as to whether the disposition was effected in a "fair and equitable manner" or as to what may have been a "fair value" for the property under the limitations and conditions of the sale.

It is the further insistence of the plaintiffs that the defendants, and in particular the Chattanooga Housing Authority, acted illegally in failing to re-establish a park of adequate size and appropriate location on Cameron Hill to replace the former Boynton Park. The plaintiffs' contention in this regard appears to be that the title of Chattanooga Housing Authority to the Cameron Hill tract was impressed with a trust to this effect. The evidence fails to reflect, however, that the Chattanooga Housing Authority held title to the Cameron Hill tract subject to any such equitable encumbrance or duty. Rather, it appears that the Chattanooga Housing Authority acquired clear title to the entire Cameron Hill tract some 15 years ago, including the former municipal park located thereon. Cameron Hill has remained undeveloped and unused since its acquisition by the Chattanooga Housing Authority. In fact, some 10 or 12 years ago the entire top portion of the hill was removed to acquire fill material for a highway project. At that time litigation was initiated by citizens and taxpayers against the Chattanooga Housing Authority in an effort to prevent the dispoilation of the hill and to preserve the Boynton Park area. The litigation resulted in an adjudication by the Tennessee Supreme Court that "the bill fails to show any proposed illegal action of the Housing Authority" and "these complainants are entitled to no rights in Boynton Park other than those common to all citizens of Chattanooga." *See* Mrs. Sim Perry Long, et al. v. Chattanooga Housing Authority, et al. (unpublished opinion entered November 9, 1962).

The Court is of the opinion that no genuine issue of fact exists but that the plaintiffs were without standing to maintain this lawsuit in the Chancery Court of Hamilton County, Tennessee, wherein it was originally filed and wherein it was pending at the time of removal to this court. The plaintiffs being without standing to maintain the lawsuit, the Tennessee Chancery Court was without jurisdiction to entertain the lawsuit. The state court being without jurisdiction, this Court is, by derivation, likewise without jurisdiction. The lawsuit must accordingly be dismissed.

In view of the conclusion herein reached, it becomes unnecessary and inappropriate to consider the further contentions and motions in the case, including the contentions of the parties with regard to the plaintiffs' standing or lack of standing under the federal law, and including the plaintiffs' motions to amend their complaint and for a temporary injunction.

An order will enter dismissing this lawsuit for lack of jurisdiction.